UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| INLINE PLASTICS CORP., ) | |
| Plaintiff, ) | CIVIL ACTION |
| ) | NO. 4:18-11631-TSH |
| LACERTA GROUP, INC., ) | |
| Defendant. ) | |

## ORDER AND MEMORANDUM ON CLAIM CONSTRUCTION (Docket Nos. 39 & 40)

**December 4, 2019**

**HILLMAN, D.J.**

This is a patent infringement suit involving tamper-resistant/tamper-evident containers. Inline Plastics Corp. ("Inline") seeks a judgment that Lacerta Group, Inc. ("Lacerta"), a competing manufacturer, infringes upon one or more claims of its patents: U.S. Patent No. 7,118,003 (the "'003 Patent"), U.S. Patent No. 7,073,680 (the "'680 Patent"), U.S. Patent No. 9,630,756 (the "'756 Patent"), U.S. Patent No. 8,795,580 (the "'580 Patent"), and U.S. Patent No. 9,527,640 (the "'640 Patent") (collectively, the "Inline Patents"). Lacerta seeks declaratory judgment that its product does not infringe the Inline Patents and/or that the Inline Patents are invalid under 35 U.S.C. §§ 102–03, 112.[1] On November 6, 2019, the Court held a *Markman* hearing and listened to the parties' proposed constructions for the following disputed terms: (1)

---

[1] Section 102 pertains to the requirement of novelty, i.e., whether an invention is new. Section 103 pertains to the requirement of non-obviousness, i.e., whether an invention would have been obvious to a person of ordinary skill in the art. Section 112 pertains to the requirement that a patent specification "contain a written description of the invention, . . . , [in] clear, concise, and exact terms as to enable any person skilled in the art to which it pertains, . . ., to make and use the same, and shall set forth the best mode contemplated by the inventor . . . of carrying out the invention."

"[upwardly projecting] bead;" (2) "at least in part;" (3) "relatively inaccessible;" (4) "hinder access;" (5) "tamper evident bridge;" (6) "projection" or "arm;" (7) "configured to substantially surround the outwardly extending peripheral flange of the cover portion;" (8) "configured to substantially surround an edge of the outwardly extending peripheral flange of the cover portion;" and (9) "the outwardly extending peripheral flange abuts the upper peripheral rim of the base portion."

## Background

The Inline Patents are variously entitled "Tamper Resistant Container with Tamper-Evident Feature and Method of Forming the Same," "Methods of Manufacturing Tamper-Resistant and Tamper Evident Containers," and "Tamper-Resistant and Tamper Evident Containers." They share similar specifications and figures and are all directed to "containers and packaging that incorporate tamper-resistant and tamper-evident features." '003 Patent col.1 l.16–19; '680 Patent col.1 l.18–21; '756 Patent col.1 l.25–28; '580 Patent col.1 l.21–23; '640 Patent col.1 l.23–26. Specifically, they describe a container incorporating a non-replaceable strip that a consumer must sever before they can remove the cover portion from the base portion. '003 Patent col.6 l.55–67; '680 Patent col.7 l.18–30; '756 Patent col.6 l.23–35; '580 Patent col.6 l.12–23; '640 Patent col.6 l.23–35.

## Indefiniteness

*1. Legal Standard*

Indefiniteness is a question of law which implicates underlying factual findings. *See Green Edge Enters., LLC v. Rubber Mulch Etc., LLC*, 620 F.3d 1287, 1299 (Fed. Cir. 2010). "[A] patent is invalid for indefiniteness if its claims, read in light of the specification delineating the patent, and the prosecution history, fail to inform, with reasonable certainty, those skilled in

the art about the scope of the invention." *Nautilus, Inc. v. Biosig Instruments, Inc.*, 572 U.S. 898, 901 (2014). Terms of degree are not inherently indefinite. *Interval Licensing LLC v. AOL, Inc.*, 766 F.3d 1364, 1370 (Fed. Cir. 2014). A claim may employ terms of degree if it "provide[s] enough certainty to one of skill in the art when read in the context of the invention" for a skilled artisan to identify the metes and bounds of the claim. *Id.*

2. Discussion

Lacerta contends that the terms "at least in part," "relatively inaccessible," and "tamper evident bridge" are indefinite.[2] First, as to "at least in part," Lacerta argues that a skilled artisan would not understand the metes and bounds of this term because the patent fails to explain what *else* may form the relevant structures aside from the specified components (i.e., what else may form the upper peripheral edge aside from the upwardly projecting bead, the cover portion aside from a sheet of plastic material, or the circumferential engagement sealing interface aside from a plurality of arcurate segments and rounded corner portions). (Docket No. 39 at 10–11). The Court disagrees that the lack of information as to what else may form these structures renders the terms indefinite. A skilled artisan would recognize that the claims cover *any* structure incorporating the specified components.[3]

---

[2] The Court declines Lacerta's invitation to postpone ruling on indefiniteness until summary judgment. The parties have fully briefed the issue, and although Lacerta contends that Inline has failed to produce documents relevant to the indefiniteness inquiry, the Court disagrees. Inline provided evidence that it has produced every record of a foreign patent prosecution in its control, and in any event, as explained in more detail below, the Court would not find the decision of foreign patent offices sufficiently persuasive to overcome the clear guidance of the claim language and specification as to the scope of the challenged terms.

[3] Lacerta cites to *Amgen, Inc. v. Chugai Pharm. Co.*, 927 F.2d 1200 (Fed. Cir. 1991). In *Amgen*, the Federal Circuit considered the term "at least about" and found it indefinite because "nothing in the specification, prosecution history, or prior art provides any indication as to what range of specific activity is covered by the term 'about.'" *Id.* at 1218. Here, in contrast, "at least in part" covers any upper peripheral edge containing an upwardly projecting bead, any cover

3

Second, as to "relatively inaccessible," Lacerta argues that this Court should find the term indefinite because the Canadian Patent Office found the same language indefinite in the prosecution of a related Canadian patent application. (Docket No. 39 at 17–18). The decision of the Canadian Patent Office does not bind this Court, *see, e.g.*, *Aia Eng'g Ltd. v. Magotteaux Int'l S/A*, 657 F.3d 1264, 1279 (Fed. Cir. 2011), and this Court disagrees with the result reached.[4] The patents provide sufficient guidance for a skilled artisan to understand the scope of the term. They only use "relatively inaccessible" in the context of the upwardly projecting bead, and the specification explains that the upwardly projecting bead makes the outwardly extending peripheral flange of the cover portion relatively inaccessible by surrounding it and physically blocking[5] access to it. *See, e.g.*, '003 Patent col.5 l.67; '680 Patent col.6 l.32; '756 Patent col.5 l.37. A skilled artisan would understand the metes and bounds of "relatively inaccessible" based on this description.

Finally, as to "tamper evident bridge," Lacerta argues that the term is indefinite because it has no antecedent basis in the '003 Patent and was only added during prosecution to differentiate prior art references. The Court disagrees. The claim language sufficiently delineates the scope of the term. Claim 1 describes the tamper evident bridge as connecting the cover portion to the base portion. '003 Patent col.8 ll.64–65. Claim 2 adds the limitation that the tamper evident bridge includes a hinge with a frangible section that joins the outwardly extending flange of the cover portion to the base portion and forms a projection when severed. '003 Patent col.8 l.66–

---

portion containing a sheet of plastic material, and any circumferential engagement sealing interface containing a plurality of arcurate segments and rounded corner portions.

[4] The Court also notes that the Examiner for the '756 Patent allowed claims using the term "relatively inaccessible" despite having been informed of the Canadian rejection.

[5] The Court rejects the suggestion that physically blocking access to something makes it 100% inaccessible. (Docket No. 39 at 19). That the upwardly projecting bead physically blocks access to the outwardly extending peripheral flange does not mean that access is impossible.

col.9 l.7. And Claim 24 focuses on making the container leak-proof after the tamper evident bridge is removed. '003 Patent col.10 ll.56–59. As Inline's expert testified, a skilled artisan would understand what a "tamper evident bridge" is based on this language. (Docket No. 40-6 at 10–16). The claim language, moreover, is consistent with the figures and description in the specification of the '003 Patent, which, despite not explicitly defining a "tamper evident bridge," does describe how it operates, e.g., how the cover and base are connected and how that relates to frangible section of the hinge. Thus, the Court declines to find "tamper evident bridge" invalid for indefiniteness.

### Claim Construction

*1. Legal Standard*

Claim construction is a question of law decided by the court. *See Markman v. Westview Instruments, Inc*., 517 U.S. 370, 372 (1996). It "requires a determination as to how a person of ordinary skill in the art would understand a claim term 'in the context of the entire patent, including the specification.'" *Trustees of Columbia Univ. in City of New York v. Symantec Corp*., 811 F.3d 1359, 1362 (Fed. Cir. 2016) (quoting *Phillips v. AWH Corp.*, 415 F.3d 1303, 1313 (Fed. Cir. 2005) (en banc)). Courts begin the analysis by looking to the language of the claims themselves. *Id.* In many instances, how a term is expressly used "within the claim provides a firm basis for construing the term." *Phillips*, 415 F.3d at 1314.

After assessing the language of the claims, courts turn to the specification, "of which [the claims] are a part." *Markman*, 52 F.3d at 979. The specification describes the invention to which the claims are directed. *Netword, LLC v. Centraal Corp*., 242 F.3d 1347, 1352 (Fed. Cir. 2001) ("The claims are directed to the invention that is described in the specification; they do not have meaning removed from the context from which they arose."). It "is the 'single best guide to

the meaning of a disputed term' and 'is, thus, the primary basis for construing the claims.'" *Symantec*, 811 F.3d at 1362 (quoting first *Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576, 1582 (Fed. Cir. 1996), then *Phillips*, 415 F.3d at 1315)).

Courts also consider the patent's prosecution history. *Symantec*, 811 F.3d at 1362–63. "The prosecution history . . . consists of the complete record of the proceedings before the PTO and includes the prior art cited during the examination of the patent." *Philips*, 415 F.3d at 1317. It "inform[s] the meaning of the claim language by demonstrating how the inventor understood the invention." *Id.*

Finally, a court may consult extrinsic evidence, which is "all evidence external to the patent and prosecution history, including expert and inventor testimony, dictionaries, and learned treatises." *Id.* Extrinsic evidence guides the analysis of how "a person of ordinary skill in the art would understand claim terms." *Id.* at 1319. But because extrinsic evidence is subject to bias and may not reflect the knowledge of a person of ordinary skill in the art at the time of the invention, courts "view[] extrinsic evidence in general as less reliable than the patent and its prosecution history in determining how to read claim terms." *Id.* at 1318.

*2. Discussion*

**A. "[Upwardly projecting] bead"**

Inline argues that the term "upwardly projecting" is self-explanatory and that the Court need only construe "bead." (Docket No. 40 at 11). Lacerta argues that the Court should construe the term "upwardly projecting bead" in its entirety. The parties agree that the Court can consider these terms together. (Docket No. 38 at 3). The proposed constructions of the disputed claims are as follows:

6

| CLAIMS | INLINE'S CONSTRUCTION | LACERTA'S CONSTRUCTION |
|---|---|---|
| '003 Patent, Claims 1, 2, 17, 19-21<br><br>'680 Patent, Claims 1, 2, 17<br><br>'640 Patent, Claim 5 | An [upwardly projecting] raised molding formed on the upper peripheral edge of the base portion. | Raised portion of the upper peripheral edge that surrounds the outer edge of the outwardly extending peripheral flange. |



There is no support for Inline's construction in the language of the claims.[6] The claims do not describe the bead as a molding; they only describe the bead as part of the upper peripheral edge of the base.

There is some support in the claim language for Lacerta's construction. The claims of the '640 Patent describe the upwardly projecting bead as "extending substantially about the perimeter of the base portion and configured to substantially surround an edge of the outwardly extending peripheral flange of the cover portion to hinder access to the container when the container is closed." '640 Patent col.12 l.24–29. The claims of the '003 and '680 Patents, however, do not mention surrounding the outer edge of the outwardly extending peripheral

---

[6] There is also no support for Inline's construction in the specifications. They only mention "molding" in reference to manufacturing containers. *See, e.g.*, '003 Patent col.7 ll.38–40, ll. 45–46.

flange. They describe the upwardly projecting bead as "extending substantially about the perimeter of the base portion and configured to render the outwardly extending flange of the cover portion relatively inaccessible when the container is closed." '003 Patent col.8 ll.59–63, col.10 l.5–9; '680 Patent col.10 ll.17–18, col.11 ll.54–55. Thus, some discrepancies exist within the claim language defining the "upwardly projecting bead."

The specifications provide guidance on how to resolve any ambiguity. All three refer to the upwardly projecting bead as "extend[ing] substantially about the perimeter of peripheral rim 22 and . . . positioned to surround the outer edge of flange 24 of cover portion 12 when container 10 is closed." '003 Patent col.6 ll.1–5; '680 Patent col.6 ll.33–37; '640 Patent col.5 ll.38–42. Each specification also explains that this position "hinders," "physically impedes," or "physically blocks" "access . . . from fingers or any other object that might normally be used for leverage to pry cover portion 12 from base portion 14." '003 Patent col.6 ll.5–13; '680 Patent col.6 ll.37–44; *see also* '003 Patent col.6 ll.55–57 ("The presence of bead 34 prevents unauthorized access to the contents of container 10 by making it difficult to pull cover portion 12 from base portion 14."); '680 Patent col.7 ll.18–20 (same); '640 Patent col.5 ll.42–49 (same). In other words, consistent with Lacerta's proposed construction, only by surrounding the outwardly extending peripheral edge of the cover with the raised portion of the upper peripheral edge of the base does the container achieve what both parties agree is the functional purpose of the upwardly projecting bead. (Docket Nos. 39 at 14, 40 at 12).

Inline contends that, under the doctrine of claim differentiation, Claim 5 of the '640 Patent would be superfluous if the relevant limitation (wherein the upwardly projecting bead is "configured to substantially surround an edge of the outwardly extending peripheral flange of the cover portion to hinder access to the container when the container is closed") inherently applied

to the upwardly projecting bead.  But no other claim in the '640 Patent mentions the upwardly projecting bead, and Inline cites no law suggesting that the claims of a different patent can render Claim 5 of the '640 Patent superfluous, so it is not clear the doctrine of claim differentiation is relevant.  And in any event, the doctrine of claim construction is not a "hard and fast rule of construction," *Kraft Foods v. Int'l Trading Co.*, 203 F.3d 1362, 1368 (Fed. Cir. 2000), and it "can not broaden claims beyond their correct scope, determined in light of the specification and the prosecution history and any relevant extrinsic evidence."  *Multiform Desiccants Inc. v. Medzam, Ltd.*, 133 F.3d 1473, 1480 (Fed. Cir. 1998).

Inline more persuasively argues that Lacerta's construction improperly limits the upwardly projecting bead to a single configuration.  (Docket No. 40 at 12).  Courts are generally reluctant to narrow a term to the preferred embodiment.  *See, e.g.*, *Curtiss-Wright Flow Control Corp. v. Velan, Inc.*, 438 F.3d 1374, 1379 (Fed. Cir. 2006); *see also Teleflex, Inc. v. Ficosa N. Am. Corp.*, 299 F.3d 1313, 1326 (Fed. Cir. 2002).  But "[t]he specification provides . . . context and substantial guidance on the meaning of" disputed terms.  *Id.*  Here, the specification indicates that the upwardly projecting bead hinders access to or renders inaccessible the contents of the container because the bead surrounds the edge of the cover portion.  Moreover, every drawing in the specification—including Figure 10, which "illustrat[es] in particular the manner in which the upwardly projecting bead on the base portion physically prevents access to the outer edge of the cover portion"—shows the upwardly projecting bead surrounding the edge of the outwardly extending peripheral flange of the cover portion.

9

In sum, the Court finds Lacerta's construction more persuasive. Accordingly, the Court construes "upwardly projecting bead" to mean "raised portion of the upper peripheral edge that substantially[7] surrounds the outer edge of the outwardly extending peripheral flange."

B. **"At least in part"**

The proposed constructions of the disputed claims are as follows:

| CLAIMS | INLINE'S CONSTRUCTION | LACERTA'S CONSTRUCTION |
|---|---|---|
| '003 Patent, Claims 1, 17<br><br>'680 Patent, Claims 1, 17<br><br>'580 Patent, Claim 15 | Plain and ordinary meaning.<br><br>In the alternative: Partially or entirely. | Indefinite. |

The language of the claims and their specifications refer to an "upper peripheral edge forming at least in part an upwardly projecting bead." Inline proposes that the ordinary meaning of "at least in part" applies. Lacerta provides no alternative definition. Accordingly, the Court construes "at least in part" to have its plain and ordinary meaning.

C. **"Relatively inaccessible"**

The proposed constructions of the disputed claims are as follows:

| CLAIMS | INLINE'S CONSTRUCTION | LACERTA'S CONSTRUCTION |
|---|---|---|
| '003 Patent, Claims 1, 17<br><br>'680 Patent, Claims 1, 17<br><br>'756 Patent, Claim 1 | Plain and ordinary meaning.<br><br>In the alternative: More difficult to access than in conventional containers. | Indefinite.<br><br>In the alternative: Physically impedes access from fingers or any other object to separate the cover portion from the base portion. |

---

[7] Lacerta's proposed construction does not include the word "substantially," but the claims and specification speak of "substantially surround[ing]" the outwardly extending peripheral flange.

10

The claims of the '003 Patent, the '680 Patent, and '756 Patent only use "relatively inaccessible" in connection with the upwardly projecting bead. And the specifications note that the upwardly projecting bead is designed to "hinder the relatively easy method of removing a cover from conventional containers that may resemble or have characteristics in common with container 10" and "physically blocks access to the edge of peripheral flange 24 on cover portion 12 from fingers or any other object that might normally be used for leverage to pry cover portion 12 from base portion 14." '003 Patent col.6 ll.5–13; '680 Patent col.6 ll.37–44; '756 Patent col.5 ll.42–49.

Inline offers evidence of the ordinary meaning of "relatively inaccessible." "[C]laim terms take on their ordinary and accustomed meanings unless the patentee demonstrated an intent to deviate from the ordinary and accustomed meaning of a claim term by redefining the term or by characterizing the invention in the intrinsic record using words or expressions of manifest exclusion or restriction, representing a clear disavowal of claim scope." *Teleflex*, 299 F.3d at 1327 (Fed. Cir. 2002). "Relatively" means "to a relative degree or extent." Docket No. 39-10 at 2; *Relatively Definition*, Merriam-Webster.com, http://www.merriam-webster.com/dictionary/relatively (last visited December 4, 2019). Inaccessible means not accessible. Inline argues that it did not disavow this ordinary meaning and that Lacerta's construction improperly limits the term to one example in the specification. The Court disagrees. The claims only use "relatively inaccessible" in the context of the upwardly projecting bead, and the specification explains that the upwardly projecting bead makes the outwardly extending peripheral flange of the cover portion relatively inaccessible by surrounding it and physically blocking access to it. '003 Patent col.5 l.67; '680 Patent col.6 l.32; '756 Patent col.5 l.37.

Accordingly, the Court construes "relatively inaccessible" to mean "physically impedes access from fingers or any other object to separate the cover portion from the base portion."

   D. **"Hinder access"**

The proposed constructions of the disputed claims are as follows:

| CLAIMS | INLINE'S CONSTRUCTION | LACERTA'S CONSTRUCTION |
|---|---|---|
| '580 Patent, Claims 1, 15<br><br>'640 Patent, Claim 5 | Plain and ordinary meaning.<br><br>In the alternative: Makes more difficult to access than in conventional containers. | Physically impedes access from fingers or any other object to separate the cover portion from the base portion. |

The claims of the '580 and '640 Patents only use "hinder access" in connection with the upwardly projecting bead. And the specifications note that the upwardly projecting bead is designed to "hinder the relatively easy method of removing a cover from conventional containers that may resemble or have characteristics in common with container 10." '580 Patent col.5 ll.32–35; '640 Patent col.5 ll.42–45. The specifications further describe that, as is best seen in Figure 10, the bead "physically blocks access to the edge of peripheral flange 24 on cover portion 12 from fingers or any other object that might normally be used for leverage to pry cover portion 12 from base portion 14." '580 Patent col.5 ll.35–39; '640 Patent col.5 ll.45–49.

Inline offers evidence of the ordinary meaning of "hinder." As noted above, "claim terms take on their ordinary and accustomed meanings unless the patentee demonstrated an intent to deviate from the ordinary and accustomed meaning of a claim term by redefining the term or by characterizing the invention in the intrinsic record using words or expressions of manifest exclusion or restriction, representing a clear disavowal of claim scope." *Teleflex*, 299 F.3d at 1327. To "hinder" means to "make slow or difficult the progress of," "to hold back," or "to delay, impede, or prevent action." Docket No.44-3 at 2; *Hinder Definition*, Merriam-

12

Webster.com, http://www.merriam-webster.com/dictionary/hinder (last visited December 4, 2019). Inline argues that did not disavow this ordinary meaning and that Lacerta's construction improperly limits the term to one example in the specification. The Court disagrees. The claims only use "hinder access" in the context of the upwardly projecting bead, and the specification explains that the upwardly projecting bead hinders access to the outwardly extending peripheral flange of the cover portion by surrounding it and physically blocking access to it. Accordingly, the Court construes "hinder access" to mean "physically impedes access from fingers or any other object to separate the cover portion from the base portion."

### E. "Tamper evident bridge"

The proposed constructions of the disputed claims are as follows:

| CLAIMS | INLINE'S CONSTRUCTION | LACERTA'S CONSTRUCTION |
|---|---|---|
| '003 Patent, Claims 1, 2, 24 | Structure that includes at least one severable score line or perforation line, which once severed provides evidence that tampering has occurred. | Indefinite. |

The Federal Circuit has already construed the term "tamper evident bridge" to mean "a structure that connects the lid and base portions of the container and also contains a removable tear strip, delimited by at least one severable score line, which once removed provides evidence that tampering has occurred." Under the principles of stare decisis, this Court is bound by that construction and thus adopts it here. *See Amgen, Inc. v. F. Hoffmann-La Roche Ltd.*, 494 F. Supp. 2d 54, 60–61 (D. Mass. 2007); *see also Exergen Corp. v. Kids-Med, Inc.*, 189 F. Supp. 3d 237, 244 (D. Mass. 2016).

### F. "Projection" or "arm"

The proposed constructions of the disputed claims are as follows:

| CLAIMS | INLINE'S CONSTRUCTION | LACERTA'S CONSTRUCTION |
|---|---|---|
| '003 Patent, Claims 2, 17, 19–21<br><br>'680 Patent, Claims 2, 17<br><br>'756 Patent, Claim 1, 7, 8<br><br>'580 Patent, Claims 1, 15<br><br>'640 Patent, Claim 6 | Plain and ordinary meaning.<br><br>In the alternative: Outwardly extending material or structure. | Structure that extends out from the [cover / base] portion that has substantially the same length as the portion of the outwardly extending flange not surrounded by the [upwardly projecting bead / upper peripheral rim]. |

Inline contends that this Court should construe the terms according to their plain and ordinary meanings. *See Teleflex*, 299 F.3d at 1327. To "project" means "to jut out." Docket No. 44-2 at 2; *Project Definition*, Merriam-Webster.com, http://www.merriam-webster.com/dictionary/project (last visited December 4, 2019). A "projection" or an "arm" is thus something that juts out.

There is no indication that Inline disclaimed the ordinary meaning of "projection" or "arm" in the claim language or specifications of its patents. The claims describe the arm or projection as "extend[ing] out beyond the upwardly projecting bead of the upper peripheral edge of the base portion, for facilitating removal of the cover portion from the base portion to open the container." '003 Patent col.9 ll.3–7, col.10 ll.13–15, col.10 ll.22–48; '680 col.10 ll.35–40, col.12 ll.1–6; '756 Patent col.12 ll.1–6, col.12 ll.25–30; '580 col.11 ll.18–27, col.12 ll.42–49; '640 col.12 ll.30–36. And the specifications reference "an upper outwardly projecting arm 36 connected to base portion 14, and a similar lower outwardly projecting arm 38, which is connected to cover portion 12." '003 Patent col.6 ll.14–16; '680 Patent col.6 ll.45–47; '756 Patent col.5 ll.50–52; '580 Patent col.5 ll.40–42; '640 Patent col.5 ll.50–52. The "[u]pper and lower arms 36 and 38 are joined together by a common attachment to frangible strip 18 to form hinge 16." '003 Patent col.6 ll.20–22; '680 Patent col.6 ll.51–53; '756 Patent col.6 ll.56–58;

'580 Patent col.5 ll.46–48; '640 Patent col.5 ll.56–58. When a consumer removes the frangible strip, the arms "can be used to facilitate removal of the cover portion 12 from base portion 14 . . . ." '003 Patent col.6 ll.49–54; '680 Patent col.7 ll.12–17; '756 Patent col.6 ll.17–22; '580 Patent col.6 ll.6–11; '640 Patent col.6 ll.17–22.

Lacerta asserts that the prosecution history of the '580 Patent supports its more limited construction. Inline added the limitation that the frangible strip is formed along at least one edge of the area proximate to where the cover and base portions meet and severing the frangible strip creates "a projection forming one of two opposed and spaced apart arms . . . extending from the base portion and cover portion for facilitation removal of the cover portion from the base portion to open the container." (Docket No. 39-12 at 2). But even assuming that this amendment, which was deleted in the final version, could help define the term "projection" or "arm," it in no way suggests that the projection must be the same length as the portion of the outwardly extending flange not surrounded by the upwardly projecting bead or upper peripheral rim. It thus cannot constitute clear disavowal of the ordinary meaning of the terms.

Accordingly, the Court construes "projection" or "arm" in line with the plain and ordinary meaning of the terms.

### G. "Configured to substantially surround the outwardly extending peripheral flange of the cover portion"

The proposed constructions of the disputed claims are as follows:

| CLAIMS | INLINE'S CONSTRUCTION | LACERTA'S CONSTRUCTION |
|---|---|---|
| '756 Patent, Claim 1<br><br>'580 Patent, Claims 1, 15 | Arranged to extend beyond the perimeter of the outwardly extending peripheral flange of the cover portion when the container is closed and hinder access thereto. | For inner edge of the upper peripheral rim to physically block access to the edge of the outwardly extending flange by being in close proximity to and extending at least the height of the outwardly extending flange. |

15

The claims describe an "upper peripheral rim extending substantially about the perimeter of the container and configured to substantially surround the outwardly extending peripheral flange of the cover portion" to either "render the outwardly extending peripheral flange of the cover portion relatively inaccessible when the container is closed" or "hinder access to the container when the container is closed." '756 Patent col.11 l.24–30; '580 Patent col.11 ll.6–11; *see also* '580 Patent col.12 ll.31–34. The specifications mention substantially surrounding the outwardly extending peripheral flange of the cover portion in the context of the upwardly projecting bead, which is part of the upper peripheral rim. *See, e.g.*, '756 Patent col.9 ll.29–34; '580 Patent col.5 ll.28–31. They explain that surrounding the outwardly extending peripheral flange "hinders," "physically impedes," or "physically blocks" "access . . . from fingers or any other object that might normally be used for leverage to pry cover portion 12 from base portion 14." '756 Patent col.5 ll.42–49; '580 Patent col.5 ll.32–30; *see also* '756 Patent col.9 ll.45–51; '580 Patent col.9 ll.29–34.

The Court finds that neither party's proposed construction is entirely accurate. While the Court agrees with Lacerta that it should interpret "configured to substantially surround the outwardly extending peripheral flange of the cover portion" consistently with the upwardly projecting bead,[8] Lacerta offers no support in the intrinsic or extrinsic evidence for including height and proximity limitations to any construction of this term. And besides pointing to two figures in the patents consistent with its definition, Inline does not explain the basis for inclusion

---

[8] The specification, after all, provides for the bead to surround the outwardly extending peripheral flange. But the Court notes that, although the specification only refers to the upwardly projecting bead as surrounding the outwardly extending peripheral flange, Lacerta has submitted no evidence that Inline disclaimed a configuration in which other portions of the upper peripheral rim also surround the outwardly extending flange.

of the limitation of "extending beyond the perimeter." The patents only describe the upper peripheral rim as extending "substantially *about* the perimeter," not beyond it. '756 Patent col.5 ll.37–42; '580 Patent col.5 ll.27–31.

Accordingly, the Court construes the term to mean "configured to physically impede access to the outwardly extending flange of the cover portion when the container is closed."

H. **"Configured to substantially surround an edge of the outwardly extending peripheral flange of the cover portion"**

The proposed constructions of the disputed claims are as follows:

| CLAIMS | INLINE'S CONSTRUCTION | LACERTA'S CONSTRUCTION |
| --- | --- | --- |
| '640 Patent, Claim 5 | Arranged to extend beyond an edge of the outwardly extending peripheral flange of the cover portion when the container is closed and hinder access thereto. | For inner edge of the upwardly projecting bead to physically block access to the edge of the outwardly extending flange by being in close proximity to and extending at least the height of the outwardly extending flange. |

The only relevant difference between this term and the previously construed term is in the addition of "an edge of."[9] For the same reasons explained above, the Court construes "configured to substantially surround an edge of the outwardly extending peripheral flange of the cover portion" to mean "configured to physically impede access to an edge of the outwardly extending flange of the cover portion when the container is closed."

I. **"The outwardly extending peripheral flange abuts the upper peripheral rim of the base portion"**

The proposed constructions of the disputed claims are as follows:

---

[9] The Court notes, however, that Claim 5 specifically refers to the upwardly projecting bead surrounding an edge of the outwardly extending peripheral flange rather than the upper peripheral rim generally.

| CLAIMS | INLINE'S CONSTRUCTION | LACERTA'S CONSTRUCTION |
|---|---|---|
| '640 Patent, Claim 1 | Plain and ordinary meaning.  In the alternative: The outwardly extending peripheral flange is adjacent to the upper peripheral rim of the base portion. | Access to the external edge of the outwardly extending flange is physically blocked by being in close proximity to and extending vertically in height at least a portion of the height of the inner edge of the upper peripheral rim. |

Inline contends that this Court should construe the terms according to their plain and ordinary meanings. *See Teleflex*, 299 F.3d at 1327. Inline alleges, without support, that the plain and ordinary meaning of the term is "adjacent" to. The Court disagrees. To "abut" means to "border on" or "touch along an edge." Docket No. 39-13 at 2; *Abut Definition*, Merriam-Webster.com, http://www.merriam-webster.com/dictionary/abut (last visited December 4, 2019).

There is no indication that Inline disclaimed this ordinary meaning in the claim language or specification of the '640 Patent. Claim 1 describes that, "when the container is closed, the outwardly extending peripheral flange of the cover portion abuts the upper peripheral rim of the base portion and the upper peripheral rim of the base portion extends beyond an outer edge of the outwardly extending peripheral flange of the cover portion substantially about the perimeter of the container." '640 Patent col.11 ll.29–35. And the specification notes that, "[w]hen cover portion 12 is closed on base portion 14," the "outwardly extending peripheral flange 24 on cover portion 12 abuts upper peripheral rim 28 on base portion 14." '640 Patent col.5 ll.29–34. Neither reference is inconsistent with "to border on" or "to touch along an edge."

Accordingly, the Court construes "the outwardly extending peripheral flange abuts the upper peripheral rim of the base portion" to have its plain and ordinary meaning. In other words, the outwardly extending peripheral flange borders upon or touches the upper peripheral rim of the base portion.

## Conclusion

For the reasons set forth above, this Court construes the disputed claims as follows:

| DISPUTED CLAIMS | THE COURT'S CONSTRUCTION |
|---|---|
| "[Upwardly projecting] bead" | Raised portion of the upper peripheral edge that substantially surrounds the outer edge of the outwardly extending peripheral flange |
| "At least in part" | Plain and ordinary meaning |
| "Relatively inaccessible" | Physically impedes access from fingers or any other object to separate the cover portion from the base portion |
| "Hinder access" | Physically impedes access from fingers or any other object to separate the cover portion from the base portion |
| "Tamper evident bridge" | A structure that connects the lid and base portions of the container and also contains a removable tear strip, delimited by at least one severable score line, which once removed provides evidence that tampering has occurred |
| "Projection" or "arm" | Plain and ordinary meaning |
| "Configured to substantially surround the outwardly extending peripheral flange of the cover portion" | Configured to physically impede access to the outwardly extending flange of the cover portion when the container is closed |
| "Configured to substantially surround an edge of the outwardly extending peripheral flange of the cover portion" | Configured to physically impede access to an edge of the outwardly extending flange of the cover portion when the container is closed |
| "The outwardly extending peripheral flange abuts the upper peripheral rim of the base portion" | Plain and ordinary meaning |

**SO ORDERED**

                                                **/s/ *Timothy S. Hillman***
                                                **TIMOTHY S. HILLMAN**
                                                **DISTRICT JUDGE**