UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| INLINE PLASTICS CORP., | ) | |
| | ) | |
| Plaintiff, | ) | 4:18-cv-11631-TSH |
| v. | ) | |
| | ) | **REDACTED VERSION** |
| LACERTA GROUP, INC., | ) | **FOR PUBLIC FILING** |
| | ) | |
| Defendant. | ) | |

**INLINE PLASTICS' MEMORANDUM IN SUPPORT OF ITS MOTION
FOR SUMMARY JUDGMENT ON LACERTA'S DAMAGES THEORY
AND TO EXCLUDE PORTIONS OF LACERTA'S EXPERT OPINION ON DAMAGES**

Inline Plastics Corp.'s damages expert, Chris Barry, opined that Inline is entitled to (1) lost profits, (2) a reasonable royalty on sales of Lacerta's infringing tamper-evident/tamper-resistant (TE/TR) plastic containers, or (3) a combination of the two. In rebuttal, Lacerta's damages expert, William Scally, opines that a royalty must be capped at the alleged cost of designing around Inline's patents to make acceptable non-infringing alternatives. Putting aside whether Lacerta could design acceptable non-infringing alternatives and what doing so would cost, Federal Circuit law is clear that damages may not be capped at the cost of implementing a design-around. *Mars, Inc. v. Coin Acceptors, Inc.*, 527 F.3d 1359, 1373 (Fed. Cir. 2008) ("Coinco is wrong as a matter of law to claim that reasonable royalty damages are capped at the cost of implementing the cheapest available, acceptable, noninfringing alternative"). Because Mr. Scally has not based his reasonable royalty analysis on reliable principles and methods, as F.R.E. 702(c) requires, Inline is entitled to exclusion of Mr. Scally's reasonable royalty opinion. Likewise, Inline is entitled to summary judgment that the royalty cannot be capped at the cost of a design-around. Further, exclusion of Mr. Sally's opinion would entitle Inline to summary judgment that, should infringement be proven, the reasonable royalty should be based on Mr. Barry's proffered rate.

ME1 35762601v.1

## UNDISPUTED FACTS[1]

On October 29, 2020, per the scheduling order, Inline's damages expert, Chris Barry, submitted his opening expert report. Mr. Barry is a CPA and was a long-time partner at PriceWaterhouseCoopers (PwC). He retired from PwC in 2017 after 33 years but is continuing to serve as a damages expert in IP litigation and other types of disputes. Mr. Barry has testified on damages and accounting issues in about 130 matters, including patent matters. SoF at ¶¶ 1-2. Mr. Barry first opined that, should infringement be proven, lost profits would form a portion of the damages. SoF at ¶ 3. Mr. Barry next opines on a reasonable royalty rate, going through the 15-factor *Georgia-Pacific* framework for a hypothetical negotiation between Inline and Lacerta. He concludes that a reasonable royalty would take the form of a royalty rate (███) applied to the infringing sales. *Id*. at ¶ 4. Finally Mr. Barry opines on a hybrid approach in which the damages would be a combination of lost profits and reasonable royalty. *Id*. at ¶ 5.[2]

Mr. Scally submitted his rebuttal report on December 4, 2020. Mr. Scally is a partner at Marcum LLP and, like Mr. Barry, previously worked at PwC. SoF at ¶¶ 6-7. In fact, Mr. Scally worked for Mr. Barry, learned from him, and was his mentee. *Id*. at ¶¶ 8-9.

After commenting on the case and industry background, Mr. Scally first addresses Mr. Barry's lost profits analysis. *Id*. at ¶ 10. That portion is not at issue here. Rather, this motion focuses on Mr. Scally's reasonable royalty analysis. As prefaced above, Inline's expert, Mr. Barry, used the *Georgia-Pacific* hypothetical negotiation factors to frame his reasonable royalty analysis. Mr. Scally also analyzes the *Georgia-Pacific* hypothetical negotiation factors and agrees that

---

[1] All fact cites are to Inline's Statement of Material Undisputed Facts (SoF) filed with this brief.

[2] Reasonable royalty damages apply to that portion of the infringing sales not covered by lost profits. Mr. Barry opines that the lost profits apply to ███ of the infringing sales. Thus, the reasonable royalty applies either to (a) the ███ of sales not covered by lost profits or (b) all infringing sales if Inline cannot prove any lost profits. SoF at ¶ 5.

reasonable royalties are usually estimated through this framework. *Id*. at ¶ 11. While purporting to comment on each of the 15 *Georgia-Pacific* factors and Mr. Barry's analysis of them, Mr. Scally focuses in particular on the cost that Lacerta would incur to modify the 18 models of accused TE/TR containers to produce non-infringing alternatives. Mr. Scally discusses three hypothetical modifications to the accused containers and the costs of implementing those modifications (*e.g.*, by retooling the molds used to form the containers) based on his *ex parte* discussions with Lacerta's CEO and CFO, Ali and Mory Lotfi. *Id*. at ¶¶ 12-13.[3]

Mr. Scally then concludes that the alleged costs of the hypothetical design-arounds would form ▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌":



*Id*. at ¶ 13 (emphasis added).

---

[3]Inline disputes whether these hypothetical modifications would avoid the patents and also the costs of implementing these modifications. But the Court need not decide that issue now. Rather, this motion focuses on Mr. Scally's conclusion that royalties would be <u>capped</u> at the cost of these hypothetical design-arounds.

3

That is the extent of Mr. Scally's analysis and his ultimate conclusion. Unlike Mr. Barry, he did not offer a running royalty rate (*e.g.*, x% of infringing sales). SoF at ¶ 14. Nor did Mr. Scally offer any other measure of damages beyond the cost of a design-around.

In addition to capping damages at the cost of a design-around, Mr. Scally committed a second fatal error. His opinion is based only on what <u>Lacerta</u> would have been willing to pay in a hypothetical negotiation. *Id.* at ¶¶ 15-17. Mr. Scally did not consider whether Inline would have accepted the cost of the alleged design-around as a reasonable royalty. Indeed, when asked whether Inline would accept the cost of a design-around, Mr. Scally doubled down, replying that



." *Id.* at ¶ 16. In essence, Mr. Scally opines that Lacerta would never negotiate willingly because, according to Scally, "▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇." *Id.*[4] In other words, rather than coming to the table for the hypothetical negotiation between willing parties, as the *Georgia-Pacific* framework requires, Lacerta would rather fight the patents. Further, when asked whether, had Inline known the ▇▇▇▇▇▇ in sales and profits that Lacerta made from infringing sales so far, Inline would have accepted the relatively small cost of the hypothetical design-around, Scally replied, "▇▇▇▇▇▇." *Id.* at ¶ 17.[5]

---

[4] Demonstrating the fallacy of this premise, Lacerta has still not modified the 18 accused containers more than two years into this litigation. At the least, Mr. Scally is not aware of whether Lacerta has introduced the design-arounds to market. SoF at ¶ 18. But the Court need not decide whether Lacerta would, or even could, design around. The point is that this premise—that Lacerta would rather fight than switch--violates the hypothetical negotiation construct, as argued below.

[5] As seen above, the most that Lacerta would pay, according to Mr. Scally, is the $▇▇▇ upper limit of the cost to modify the 18 container models. But through June 2020, Lacerta had over $▇▇▇▇▇▇ in sales of the accused containers. SoF at ¶ 19. A $▇▇▇▇ one-time license payment on $▇▇▇▇▇▇ in sales translates to a miniscule ▇▇▇% royalty rate. That is surely unreasonable. But this Court need not weigh the reasonableness of that royalty at this time. Rather, the focus is on how Mr. Scally got there. His methodology violates F.R.E. 702.

4

**ARGUMENT**

Mr. Scally's (and hence Lacerta's) reasonable royalty is based on the contention that Lacerta would never pay more for a license then the cost of designing around Inline's patents to produce acceptable, non-infringing alternatives. Indeed, Mr. Scally opines that the cost of a design-around would be ███████████████ royalties. SoF at ¶ 13. There are two problems with Mr. Scally's reasonable royalty analysis. First, Mr. Scally "is wrong as a matter of law to claim that reasonable royalty damages are capped at the cost of implementing the cheapest available, acceptable, noninfringing alternative." *Mars, Inc. v. Coin Acceptors, Inc*, 527 F.3d 1359, 1373 (Fed. Cir. 2008). Second, the *Georgia-Pacific* reasonable royalty analysis assumes a hypothetical arms-length negotiation between <u>willing</u> parties and considers not just what the accused infringer would be willing to pay but also what the patent owner would accept. *Aqua Shield v. Inter Pool Cover Team*, 774 F.3d 766, 771 (Fed. Cir. 2014)("the ultimate royalty determination must reflect the two-sided nature of the posited negotiation). Mr. Scally failed to consider what Inline would accept and focused solely on what Lacerta would pay. Moreover, Mr. Scally based his opinion on the assumption that, instead of negotiating willingly, Lacerta would "████████████████████████████████████████████." SoF at ¶ 16.

Thus, Mr. Scally has not conducted a legally valid reasonable royalty analysis, and his reasonable royalty opinion can be excluded on either the first or second basis or both. For the same reasons, Inline is entitled to summary judgment that royalties cannot be capped at the cost of a design-around. Further, exclusion of Scally's reasonable royalty opinion would leave Mr. Barry's reasonable royalty opinion unrebutted. In that case, Inline would also be entitled to summary judgment that Mr. Barry's proffered royalty rate should be applied to the royalty base.

**I.     SCALLY'S REASONABLE ROYALTY OPINION SHOULD BE EXCLUDED**

    **A.     The *Daubert* Standard**

Federal Rule of Evidence 702 provides that

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if: (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case.

Under *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579 (1993), courts perform a gate-keeping function to ensure that expert opinions are not based on impermissible or arbitrary methodologies. Basing an opinion on a legally erroneous theory--as Mr. Scally does here when, contrary to Federal Circuit precedent, he caps the reasonable royalty at the cost of a design-around—certainly qualifies as an impermissible methodology that would require exclusion of the opinion. *See, e.g., VirnetX, Inc. v. Cisco Sys., Inc.*, 767 F.3d 1308, 1328 (Fed. Cir. 2014) (holding that damages expert should have been excluded and observing that "[w]hile questions regarding which facts are most relevant for calculating a reasonable royalty are properly left to the jury, a critical prerequisite is that the underlying methodology be sound.  Here, it was not, and the district court should have exercised its gatekeeping authority to ensure that only theories comporting with settled principles of apportionment were allowed to reach the jury"); *Applied Med. Resources Corp. v. U.S. Surgical Corp.*, 147 F.3d 1374, 1381 (Fed. Cir. 1998) (affirming district court's exclusion of expert's testimony because the testimony would only be relevant under an "erroneous construction of the law"). Excluding an expert is within the trial court's discretion and reviewed only for abuse of discretion. *State Contracting  & Eng'g Corp. v. Condotee America, Inc.*, 346 F.3d 1057, 1073 (Fed. Cir. 2003) (affirming court's exclusion of damages expert).

### B. Mr. Scally's Methodology—Capping Damages at the Cost of a Design-Around—Fails as a Matter of Law

In the *Mars* case, the defendant, Coinco, argued "that an infringer should not be required to pay more in reasonable royalty damages than it would have paid to avoid infringement in the first place by switching to an available non-infringement alternative." 527 F.3d at 1372. The Federal Circuit emphatically rejected this argument, however:

> . . . even if Coinco had shown that it had an acceptable noninfringing alternative at the time of the hypothetical negotiation, Coinco is wrong as a matter of law to claim that reasonable royalty damages are capped at the cost of implementing the cheapest available, acceptable, noninfringing alternative. We have previously considered and rejected such an argument. *See Monsanto Co. v. Ralph*, 382 F.3d 1374, 1383 (Fed. Cir. 2004) (rejecting infringers argument that a "reasonable royalty deduced through a hypothetical negotiation process can never be set so high that no rational self-interested wealth-maximizing infringer acting *ex ante* would ever have agreed to it"). To the contrary, an infringer may be liable for damages, including reasonable royalty damages, that exceed the amount that the infringer could have paid to avoid infringement.

*Id.* at 1373. *See also, e.g.*, *M2M Sols. LLC v. Enfora, Inc.*, 167 F. Supp. 3d 665, 682 (D. Del. 2016) ("Defendants' argument that damages can be no greater than the cost of a non-infringing alternative plus indirect costs fails as a matter of law. The Federal Circuit has outright rejected such arguments . . .") (*citing Mars*, 527 F.3d at 1373); *SimpleAir, Inc. v. Google Inc.*, 77 F. Supp. 3d 569, 582 (E.D. Tex. 2014) ("To the extent Google's argument that Mr. Mills' calculation and/or the jury's damages award is 'outrageously high' is an attempt to cap damages at the cost of implementing its non-infringing alternative; that argument fails as a matter of law")(citing *Mars*).

As seen above, the sum and substance of Mr. Scally's opinion is that the alleged cost of hypothetical modifications would be ████████████ a reasonable royalty. SoF at ¶ 13. Mr. Scally did not offer an alternative royalty rate (*e.g.*, x%) to be applied to Lacerta's infringing sales. He did not use the cost of a design-around as merely one factor out of many to adjust Mr. Barry's royalty rate up or down. To the contrary, Mr. Scally insisted that "████████████

7

███████." *Id.* In effect, what should have been just one factor became the only factor, the conclusion, and the cap on damages. The Federal Circuit forbids this methodology, and thus Mr. Scally's reasonable royalty opinion is not the product of reliable principles and methods, as F.R.E. 702(c) requires. As such, Mr. Scally's reasonable royalty opinion should be excluded.[6]

### C. It Takes Two to Tango on Reasonable Royalties

In a patent case, "the court shall award the claimant damages adequate to compensate for the infringement, but in no event less than a reasonable royalty for the use made of the invention by the infringer." 35 U.S.C. § 284. To determine a reasonable royalty, courts typically follow the hypothetical negotiation framework of *Georgia-Pacific Corp. v U.S. Plywood Corp.*, 318 F. Supp. 1116 (S.D.N.Y. 1970), *modified*, 446 F.2d 295 (2d Cir. 1971). Indeed, the Federal Circuit has recognized this hypothetical negotiation approach as the "traditional" and "most common" methodology. *Aqua Shield v. Inter Pool Cover Team*, 774 F.3d 766, 770 (Fed. Cir. 2014); *VirnetX*, 767 F.3d at 1326. Mr. Scally agreed that the *Georgia-Pacific* hypothetical negotiation approach is usually used, particular when, as here, there is no established royalty. SoF at ¶ 11.

Importantly, the hypothetical negotiation approach assumes an arms-length negotiation held on the eve of the first infringement in which each party (a) assumes that the patent is valid and infringed and (2) is <u>willing</u> to enter into a business resolution. *Aqua Shield*, 774 F.3d at 771 ("the method assumes infringement and validity of the patents and willingness of the parties to negotiate an agreement"); *Lucent Techs. Inc. v. Gateway Inc.*, 580 F.3d 1301, 1324-25 (Fed. Cir.

---

[6] Had Mr. Scally used the cost of a design-around merely as one factor out of many to consider in adjusting the reasonable royalty rate up or down, that might have been different. *M2M*, 167 F. Supp. 3d at 682. But, as the *M2M* court cautioned, the cost of a design-around "remains just that, a factor, and does not conclusively establish an upper limit on a reasonable royalty." *Id.*, citing *Zygo Corp. v. Wyko Corp.*, 79 F.3d 1563, 1571-72 (Fed. Cir 1996). That was Mr. Scally's failing: he elevated one factor to a conclusion that capped the royalty, calling the cost a "█████."

8

2009) (same). As such, the reasonable royalty analysis cannot be so one-sided that it focuses only on what the accused infringer would be willing to pay. *Rite-Hite Corp. v. Kelley Co.*, 56 F.3d 1538, 1555 (Fed. Cir. 1995) ("what an infringer would prefer to pay is not the test for damages"); *Aqua Shield*, 774 F.3d at 771 ("the ultimate royalty determination must reflect the two-sided nature of the posited negotiation"). *Georgia-Pacific* itself emphasizes that the hypothetical negotiation inquiry examines not just what a prudent accused infringer would be willing to pay for a license but also whether that "amount would have been [deemed] acceptable by a prudent patentee who was willing to grant a license." *Georgia-Pacific*, 318 F. Supp. at 1120 (Factor 15).

Mr. Scally did not consider what Inline would have accepted. In fact, while paying lip service to the concept that a hypothetical negotiation involves willing parties who assume validity and infringement of the patents, Mr. Scally actually based his conclusion on the exact opposite approach. Rather than assume a scenario in which Lacerta acknowledges infringement of valid patents and is willing to negotiate, Scally assumed a scenario in which ███████████ ███████████████████████████████████." SoF at ¶ 16. Further, when asked whether Inline would accept the cost of a design-around, Mr. Scally doubled down, replying that "█████████████████████████████████████████ █████████████████████████████." *Id*.

In effect, Mr. Scally ignores Inline's side of the equation, ignores that Lacerta must assume infringement of valid patents, and instead opines that because Lacerta allegedly had the ability to design around the patents, it would continue to do so *ad infinitum* rather than meet Inline in the middle. That view is not a valid reasonable royalty methodology. *Aqua Shield*, 774 F.3d at 771 ("the royalty the particular infringer could profitably pay by going about its business in its particular way does not set the market value that the hypothetical negotiation aims to identify");

9

*Rite-Hite*, 56 F.3d at 1554 n.13 ("The willing licensee/licensor concept is 'employed by the court as a means of arriving at reasonable compensation and its validity does not depend on the actual willingness of the parties to the lawsuit to engage in such negotiations'") (citations omitted).[7] As such, Scally's reasonable royalty opinion should be excluded.

## II.     INLINE IS ENTITLED TO SUMMARY JUDGMENT

Whether or not this Court excludes Mr. Scally's reasonable royalty opinion, Inline is entitled to summary judgment that reasonable royalty damages cannot be capped at the cost of a design-around. *Mars, Inc. v. Coin Acceptors, Inc*, 527 F.3d 1359, 1373 (Fed. Cir. 2008) ("Coinco is wrong as a matter of law to claim that reasonable royalty damages are capped at the cost of implementing the cheapest available, acceptable, noninfringing alternative"). But if this Court does exclude Mr. Scally's reasonable royalty opinion on either of the two grounds argued above, then that would leave Mr. Barry's reasonably royalty opinion unrebutted. As such, Inline is also entitled to summary judgment that, should infringement be proven, Mr. Barry's reasonable royalty rate should be applied to the appropriate portion of infringing sales. *See, e.g., SunTiger, Inc. v. Scientific Research Funding Group*, 194 F.3d 1335 (Fed. Cir. 1999) (affirming district court's grant of JMOL to plaintiff on issue of infringement given that, *inter alia*, the testimony of plaintiff's technical expert was unrebutted).

---

[7] Thus, even though, in reality, Lacerta has continued to litigate, that is irrelevant. Mr. Scally's error was failing to put the parties into the correct hypothetical negotiation framework in which both parties are willing and the accused infringer assumes infringement of valid patents. Indeed, years ago in *Rite-Hite*, the Federal Circuit criticized the approach that Mr. Scally has now adopted: "that the parties might have agreed to a lesser royalty is of little relevance, for to look only at that question would be to pretend that the infringement never happened; it would also make an election to infringe a handy means for competitors to impose a compulsory license policy upon every patent owner." *Rite-Hite*, 56 F.3d at 1555 (citations omitted). In opining that Lacerta would continue to fight without taking a license, Scally, in essence, pretends that the infringement never happened.

## CONCLUSION

For the foregoing reasons, Inline respectfully asks this Court to (1) exclude Mr. Scally's reasonable royalty opinion because it is not the product of reliable principles and methods, as F.R.E. 702(c) requires; (2) enter summary judgment that the reasonable royalty cannot be capped at the cost of a design-around; and (3) enter summary judgment that, should infringement be proven, Inline is entitled to have Mr. Barry's unrebutted reasonably royalty rate applied to the appropriate portion of infringing sales.

DATED:  February 22, 2021        Respectfully submitted,

                                 INLINE PLASTICS CORP.,
                                 By its attorneys,

                                 */s/ Erik P. Belt*
                                 Erik Paul Belt (BBO # 558620)
                                 ebelt@mccarter.com
                                 Thomas F. Foley (BBO # 694343)
                                 tfoley@mccarter.com
                                 MCCARTER & ENGLISH, LLP
                                 265 Franklin Street
                                 Boston, MA 02110
                                 T: (617) 449-6500
                                 F: (617) 607-9200

                                 David J. Silvia (*pro hac vice*)
                                 dsilvia@mccarter.com
                                 MCCARTER & ENGLISH, LLP
                                 201 Broad Street
                                 Stamford, CT 06901

## CERTIFICATE OF SERVICE

I certify that on February 22, 2021, this document was electronically filed with the Clerk of the Court using the CM/ECF system and will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF), pursuant to Local Rule 5.4(C).

                                 /s/ *Erik P. Belt*
                                 Erik Paul Belt