UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| INLINE PLASTICS CORP.,<br>    Plaintiff,<br><br>v.<br><br>LACERTA GROUP, INC.<br>    Defendants. | CIVIL ACTION<br>NO. 4:18-11631-TSH |

ORDER ON DEFENDANT'S MOTION TO STRIKE (Docket No. 90)

FEBRUARY 23, 2021

**HILLMAN, D.J.,**

Inline Plastics and Lacerta Group are market competitors who manufacture plastic clamshell containers used to store perishable goods. Before the Court is Defendant's ("Lacerta") Motion to Strike Portions of Plaintiff's ("Inline") expert report for late disclosure of a new patent infringement theory. Specifically, Lacerta seeks to strike ¶¶ 72-73, 103-04, 127-128, 158-59, 205-06, 297, 366-67, and portions of ¶¶ 27, 46, 66, 141, 234, 265, 334, 374, and 375 of the Kazmer Report, through which Inline seeks to introduce a doctrine of equivalents infringement theory for two of the claim limitations at issue, even though it did not assert any equivalency infringement theories in its four sets of patent disclosures as required by L.R. 16.6(d)(1)(A)(v).

Inline issued its Preliminary Infringement Contentions on January 29, 2016; its Revised Preliminary Infringement Contentions on March 6, 2019; its Secondary Revised Preliminary

Infringement Contentions on May 17, 2019; and its Third Revised Preliminary Infringement Contentions on May 12, 2020.  (*See* Docket Nos. 91-2; 91-3; 91-4; 91-5.).  The Court held a *Markman* hearing on claim construction on November 6, 2019. (Docket No. 51).  Fact discovery closed on September 30, 2020.  (Docket No. 68).  Inline's infringement expert Dr. Kazmer submitted his report on October 29, 2020.  (Docket No. 91-1).

The Court held a hearing on the Lacerta's Motion to Strike (Docket No. 90) on February 11, 2021.  For the reasons set forth below, Lacerta's Motion is **_GRANTED_**.

## Discussion

*Doctrine of Equivalents*

Patent infringement claims may be alleged under literal or equivalent infringement theories.  Under the doctrine of equivalents ("DOE"), "a product or process that does not literally infringe upon the express terms of a patent claim may nonetheless be found to infringe if there is 'equivalence' between the elements of the accused product or process and the claimed elements of the patented invention." *Warner–Jenkinson Co. v. Hilton Davis Chem. Co.,* 520 U.S. 17, 21 (1997).  "To infringe a claim under the doctrine of equivalents, an accused device must include an equivalent for each literally absent claim limitation." *Toro Co. v. White Consol. Indus. Inc.*, 266 F.3d 1367, 1370 (Fed. Cir. 2001). To make this determination, courts often apply the "insubstantial differences test," asking whether "only 'insubstantial differences' distinguish the missing claim element from the corresponding aspects of the accused device." *Leggett & Platt, Inc. v. Hickory Springs Mfg. Co.*, 285 F.3d 1353, 1359 (Fed. Cir. 2002) (quotation omitted).

*Local Rule 16.6*

L.R. 16.6(d)(1)(A) requires plaintiffs in patent cases to make preliminary patent-related disclosures within 21 days after the initial scheduling conference (or at such time as the Court may order). These disclosures must include infringement claim charts, patent prosecution history, ownership evidence, and the identify of the real parties in interest. *Id.*

Infringement claim charts must include six elements: "(i) each accused product and/or method; (ii) the patent(s) and the claim(s) each product or method allegedly infringes; (iii) an element-by-element description of where and how each element of each asserted claim is found in each accused product or method; (iv) as to each element that the patentee contends is a means-plus function term under 35 U.S.C. § 112, the identity of the structures, acts, or materials in the accused product(s) or method(s) that perform the claimed function; (v) *whether each element of each asserted claim is asserted to be present literally or under the doctrine of equivalents*; and (vi) if any alleged infringement is based on the acts of multiple parties, the role of each such party in the infringement." *Id.* (*emphasis added*).

In recognition of the duty under Fed. R. Civ. P. 26(e) to supplement discovery responses, L.R. 16.6(d)(5) provides for parties to supplement their patent infringement disclosures with leave of court upon a showing of good cause.

*Analysis*

1. <u>Upwardly Projecting Bead Limitation</u>

Three of Inline's allegedly infringed patents—the '003 Patent, '680 Patent, and the '640 Patent—protect the design of a clear, plastic, tamper-resistant container and contain a limitation for an "upwardly projecting bead" on the bottom portion of the container that prevents access to

the outwardly extending phalange of the cover. *See* Ex. A, Docket No. 1-1 ('003 Patent) (Claims 1,17,21); Ex. B, Docket No. 1-2 ('680 Patent) (Claims 1,17); Ex. E, Docket No. 33-5 ('640 Patent) (Claim 5).

Inline's Infringement Contentions were purely based on a literal infringement theory. In its Preliminary Infringement Contentions and three amendments, Inline consistently represented that the accused products sold by Lacerta contained the same structure—an upwardly projecting bead on the bottom portion of the container that prevents access to the outwardly extending phalange of the cover. *See* Prelim. Infringement Contentions ("PIC") at 5, 6, 10, 18, 23, Docket 91-2; Revised PIC at 6, 10-11, 15, 21, 26-27, Docket No. 91-3; Second Revised PIC at 5-6, 10-11, 20-21, 26-27, 59, Docket No. 91-4; and Third Revised PIC at 7-8, 12-13, 18, 51, 57-58, 63-64, 79-80, 85, 90, 121-22, 136-37, 141-42, 146-47, 176-77, 182-83, 195, 200-201, 232, 237-38, 243-44, 257-58, 263-64, 268-69, 301, 307, Docket No. 91-5. None of Inline's Infringement Contentions stated that any of the accused products sold by Lacerta had a different physical structure that was the equivalent of the upwardly projecting bead or referenced equivalency or the DOE in any way.

The Kazmer Report introduced an equivalent theory of infringement that Lacerta's accused products contained a bead equivalent:

> "To the extent that the accused containers do not literally infringe these elements, they infringe under the Doctrine of Equivalents. Specifically, for the reasons above, a POSITA[1] would understand that the upper peripheral rim includes a bead as recited in the claims of the '003 Patent. Even if it is determined that the upper peripheral rim does not literally include a bead, the angled surface formed on the upper rim of the accused products is at least equivalent to a bead as claimed."

(Kazmer Rep. ¶ 72-73, Docket No. 91-1.).

---

[1] Person of ordinary skill in the art.

4

Dr. Kazmer made the same equivalency infringement arguments for the products that allegedly violated the upwardly projecting bead limitation in the '680 and '640 patents. (Kazmer Rep., ¶¶ 72-73, 103-04, 127-28, 158-59, 205-206, 366-67, Docket No. 91-1.).

Inline concedes that it did not disclose or even reserve the right to add equivalent infringement theories in any of its four sets of Infringement Contentions. Instead, it contends that it should be allowed to pursue an equivalent infringement theory because it would not prejudice Lacerta since the literal and equivalent infringement theories rely on the same structure (the so-called angled surface on the bottom portion of the accused products), would not require new fact or claim construction, and Lacerta would have an opportunity to depose Dr. Kazmer and ask about his DOE theories. (Docket No. 92 at 2). Furthermore, Inline argues its untimeliness should be excused because Lacerta's non-infringement contentions concerning the bead limitation were too vague for Lacerta to have reasonably presented a detailed equivalency position earlier.

I disagree with Inline that allowing Lacerta an additional hour to depose Dr. Kazmer and have its own expert rebut the DOE theory in their report would have cured the prejudice caused by allowing Inline to argue liability under the DOE at trial.[2] Allowing Inline to proceed under literal *and* equivalent infringement theories provides it with two bites at the infringement apple; it also increases the scope of the defense that Lacerta will need to prepare for trial.

Inline has had ample time to seek leave of court to amend its Infringement Contentions to add DOE infringement theories; instead, it chose to wait until eleven months after the *Markman* hearing in November 2019 and after the submission of the Kazmer Report. If Lacerta's Non-Infringement Contentions were too vague to put Inline on notice that it should consider an

---

[2] This motion was not fully briefed until after Dr. Kazmer's deposition by Defendant on January 12, 2021.

equivalence infringement theory as well as a literal infringement theory for the bead limitation, then it should have filed a motion to compel Inline to supplement its Non-Infringement Contentions with the Court, as L.R. 16.6 contemplates. Inline says that it requested further detailed non-infringement contentions from Lacerta about the bead limitation by email on April 1, 2019, so it was aware of any deficiencies for more than 7 months before the *Markman* hearing and more than 19 months before it submitted its expert report to Lacerta yet failed to alert the Court. (See Docket No. 92 at 9-10.).

None of the cases that Inline cites for support compel a different conclusion. Inline notes that five courts have denied motions to strike expert reports when a patent plaintiff reserved the right to pursue an equivalency infringement theory but did not provide detailed contentions. *See, e.g., Innovation Sciences., LLC v. Amazonc.com, Inc.*, 2020 WL 4201862 at *2 (E.D. Tex. Jul. 22, 2020); *Auburn Univ. v. Int'l Business Machines Corp.*, 864 F. Supp. 2d 1222 (M.D. Ala. 2012); *Power Integrations, Inc. v. Fairchild Semiconductor Int'l, Inc.*, 763 F. Supp. 2d 671, 693 (D. Del. 2010); *MediaTek Inc. v. Freescale Semiconductor, Inc.*, No. 11-5341, 2014 WL 2854773 at *1 (N.D. Cal.); *Finjan, Inc. v. Blue Coat Sys. Inc.*, No. 13-03999, 2016 WL 3640694 (N.D. Cal. Jun. 11, 2015).

Unlike Lacerta, those five defendants all had some measure of notice that the plaintiff might assert an equivalency infringement theory when infringement contentions were due at the earlier stages of proceedings, not years after the beginning of the suit and at the tail end of discovery. *See. e.g., Innovation Sciences* at *2 ("Plaintiff's infringement contentions . . . plainly put Defendants on notice that Innovation intended to argue a doctrine-of-equivalents theory. . ."). Critically, neither the U.S. District Courts for the District of Alabama or the District of Delaware have local rules requiring parties to disclose whether they will invoke the DOE well before

dispositive pleadings like L.R. 16.6, which is the crux of this motion. The Court in *Auburn University* had found that the plaintiff had sufficiently pled the DOE *before* the disputed expert report providing more detail was submitted, and in *Power Integrations* the Court denied the plaintiff's motion to strike the defendant's expert report on infringement by the DOE because the plaintiff had "long been on notice" that the defendant would assert DOE infringement counterclaims, and there was requirement (like L.R. 16.6) that a party must assert the bases of their equivalent infringement theories any before the deadline to disclose expert reports. 864 F.Supp.2d at 1227; 763 F.Supp.2d 671, 692-93. Similarly, in *MediaTek*, a case in the Northern District of California—which has a rule analogous to L.R. 16.6(d)[3]—the Court also allowed the expert report to stand because the plaintiff's infringement contentions had invoked the DOE in a manner that provided "information sufficient" for the Defendant to be on notice. *MediaTek* at *1. Finally, in *Finjan*, a judge in the Northern District of California declined to strike an expert report that "more fully explain[ed]" the plaintiff's DOE infringement theories that had already been raised, albeit with inadequate facts and allegations, in its infringement contentions. *Id*. at 5-6.

      Inline asks that if I am inclined to grant the motion to strike, I order a less severe sanction and instead grant Inline leave to amend its infringement contentions for a fifth time to add infringement by DOE theories. Under L.R. 16.6, leave to amend requires a showing of good cause and lack of undue prejudice to the moving party. L.R. 16.6(d)(5).

---

[3] Patent Local Rule 3–1(e) requires infringement plaintiffs to state in their initial disclosures "[w]hether each limitation of each asserted claim is alleged to be literally present or present under the doctrine of equivalents in the Accused Instrumentality." Patent L.R. 3–1(e).

7

Two cases from the Northern District of California persuade me against that course.[4] First in *Fujifilm Corp. v. Motorola Mobility LLC*, Judge Orrick denied Fujifilm leave to amend its infringement contentions to add DOE infringement theories or as a means of receiving post hoc authorization to assert the DOE theories already included in its expert's report, because Fujifilm "failed to show that it previously lacked a good faith basis to assert its doctrine of equivalent theories" which "are based on the same structure sin the same products that Fujifilm for moths has asserted literally infringe." 2015 WL 757575 at *8 (Feb. 20, 2015).  Reaching the opposite conclusion in *Finjan, Inc. v. Symantec Corp.*, Magistrate Judge Corley found there was good cause to allow Finjan to amend its infringement contentions to add DOE infringement theories where Symantec provided new and highly relevant technical information in a supplemental response to an interrogatory one hour before the discovery deadline that it had not previously disclosed. 2017 WL 4025219 AT *1, 3.

Here, Inline knew about L.R. 16.6(d)(5)'s requirement to supplement its infringement contentions to include DOE infringement theories and did not seek leave to amend or ask the Court to order Lacerta to clarify its Non-Infringement Contentions. Inlien's argument that it did not realize that it should also invoke the DOE is also unavailing because under the terms of L.R. 16.6(d)(4), Lacerta had already provided it with technical documents and samples of all the accused products and noninfringement claims charts which should have been enough information for Inline to assess whether it should assert DOE infringement theories. Not only has Inline failed to abide by L.R. 16.6(d), which it relegates to a single footnote, but it has failed to show good cause for leave to amend at this late stage in the game.

---

[4] Amendment of patent infringement contentions also requires a good cause showing in the Northern District of California, which makes cases from that District, which has a larger body of doctrine of equivalents jurisprudence to draw upon, apt for comparison. Patent L.R. 3-6(a).

2. Roll of Polyethylene Terephthalate ("PET") Limitation

The '580 Patent protects Inline's method for thermoforming containers. Claim 3 of the '580 Patent contains a limitation for a "container . . . formed from a roll of polyethylene terephthalate subjected to a vacuum and pressure mold with plug assist." In its PICs, Inline alleges that Lacerta infringed on its '580 Patent by producing containers using PET. Second Revised PIC at 45; Third Revised PIC at 11-12, 103-104, 160, 213-14, 281-82 Docket No. 91-5. The Kazmer Report introduced this new infringement theory:

> "To the extent that Lacerta does not use a roll but rather directly extrudes sheet into a thermoforming process, a POSITA would understand that both methods result in an input sheet of uniform gauge thickness after which the *same thermoforming process may be used* to achieve the *same result*. Accordingly, a POSITA would understand that the two methods are *equivalent* with respects to the requirements of Claim 3."

(Kazmer Rep. ¶ 297, Docket No. 91-1 (*emphasis added*)).

Inline claims that Dr. Kazmer's statements about the '580 Patent and thermoforming were not a DOE argument because he used the word equivalent "in a non-technical sense to convey that the roll of polyethylene terephthalate limitation may be directly and literally met by exuding sheet into a thermoforming process." (Docket No. 92 at 11). However, Inline forfeited this argument because Dr. Kazmer stated unequivocally that ¶ 297 was an opinion under the DOE at his deposition. (Kazmer Dep. 168:10-169:7, Docket No. 107-1).

The same analysis that I conducted regarding the bead limitation applies here, as Inline did not include any equivalent infringement theories in its PICs regarding Claim 3 of the '580 Patent and seeks to introduce them for the first time in the context of the Kazmer Report.

**Conclusion**

I have reviewed the paragraphs and sections of the Kazmer Report that Lacerta proposes to strike and find that they all relate to untimely infringement by doctrine of equivalence theories. For the reasons set forth above, the Defendant's Motion to Strike (Docket No. 90) is **GRANTED**.

**SO ORDERED.**

*/s/ Timothy S. Hillman*
**TIMOTHY S. HILLMAN**
**DISTRICT JUDGE**
