## UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| _____ ) | |
| **INLINE PLASTICS CORP.,** ) | |
| **Plaintiff,** ) | **CIVIL ACTION** |
| ) | **NO.  4:18-cv-11631-TSH** |
| **v.** ) | |
| ) | |
| **LACERTA GROUP, INC.,** ) | |
| **Defendant.** ) | |
| ) | |
| _____ ) | |

## MEMORANDUM AND ORDER ON  LACERTA'S MOTION FOR SUMMARY JUDGMENT OF NON-INFRINGEMENT (Docket No. 115); INLINE'S MOTION FOR PARTIAL SUMMARY JUDGMENT OF INFRINGEMENT (Docket No. 117); AND INLINE'S MOTION FOR SUMMARY JUDGMENT ON LACERTA'S DAMAGES THEORY AND TO EXCLUDE PORTIONS OF LACERTA'S EXPERT OPINION (Docket No. 120)

### September 14, 2021

**HILLMAN, D.J.,**

Plaintiff Inline Plastics Corp. ("Inline") alleges that Defendant Lacerta Group, Inc. ("Lacerta") has infringed five of its patents for the design or production of plastic tamper-resistant/tamper-evident containers.  After hearing and upon review of the extensive briefing and presentation materials provided, Lacerta's motion for summary judgment of non-infringement (Docket No. 115) is ***denied***; Inline's motion for partial summary judgment of infringement is ***denied in part and granted in part***; and Inline's motion for summary judgment on Lacerta's damages theory and to exclude portions of its expert testimony is ***denied***.

# I.  Factual Background

| Inline-Owned Patents at Issue |
| --- |
| **'003 Patent.** TR/TE[1] container design. |
| **'680 Patent.** TR/TE container design. |
| **'756 Patent.** TR/TE container design. |
| **'580 Patent.** TR/TE container thermoforming process. |
| **'640 Patent.** TR/TE container thermoforming process. |

Inline owns Patent Nos. 7,118,003 ("Tamper Resistant Container with Tamper-Evident Feature and Method of Forming the Same") (the '003 Patent), issued October 10, 2006; 7,073,680 ("Tamper Resistant Container with Tamper-Evident Feature and Method of Forming the Same") (the '680 Patent), issued July 11, 2006; 9,630,756 ("Tamper-Resistant and Tamper Evident Containers") (the '756 Patent), issued on April 25, 2017; 8,795,580 ("Methods of Manufacturing Tamper-Resistant and Tamper Evident Containers") (the '580 Patent), issued on August 5, 2014; and 9,527,640 ("Methods of Manufacturing Tamper-Resistant and Tamper Evident Containers) (the '640 Patent), issued December 27, 2016.  They share similar specifications and figures and are all directed to "containers and packaging that incorporate tamper-resistant and tamper-evident features." '003 Patent col.1 l.16– 19; '680 Patent col.1 l.18– 21; '756 Patent col.1 l.25–28; '580 Patent col.1 l.21–23; '640 Patent col.1 l.23–26.  Specifically, they describe a container incorporating a non-replaceable strip that a consumer must sever before they can remove the cover portion from the base portion. '003 Patent col.6 l.55–67; '680 Patent col.7 l.18–30; '756 Patent col.6 l.23–35; '580 Patent col.6 l.12– 23; '640 Patent col.6 l.23–35.

Inline markets and sells its tamper-resistant/tamper-evident containers under the SAFE-T-FRESH brand name, while Lacerta sells its competing containers under the FRESH N' SEALED brand name.  Inline alleges that 18 of Lacerta's FRESH N' SEALED containers (the

---

[1] "Tamper-Resistant/Tamper-Evident."

"Accused Products") directly infringe on the '003, '680, '756, '580, and '640 patents. Specifically, Inline alleges that one or more of the Accused Products infringe on the following claims of the patents in suit:

| Patent | Claims Allegedly Infringed |
|---|---|
| '003 Patent | 1*, 2-3, 7, 9, 17*, 18-20, 21*, 22, 24, 25 |
| '680 Patent | 1*, 2-9, 17*, 18-21, 23, 25, 27 |
| '756 Patent | 1*, 3, 5-8 |
| '580 Patent | 1*, 2-4, 8, 9, 15* |
| '640 Patent | 1*, 2-3, 5, 6 |

*Independent claims.

## II.   Procedural History

The Court conducted a *Markman* hearing and issued a claim construction order on December 4, 2019.  The Order construed the following claim terms: "[upwardly projecting] bead;" (2) "at least in part;" (3) "relatively inaccessible;" (4) "hinder access;" (5) "tamper evident bridge;" (6) "projection" or "arm;" (7) "configured to substantially surround the outwardly extending peripheral flange of the cover portion;" (8) "configured to substantially surround an edge of the outwardly extending peripheral flange of the cover portion;" and (9) "the outwardly extending peripheral flange abuts the upper peripheral rim of the base portion." (Docket No. 53).

| DISPUTED CLAIMS | THE COURT'S CONSTRUCTION |
|---|---|
| "[Upwardly projecting] bead"<br>➤  '003 Patent, Claims 1, 2, 17, 19-21<br>➤  '680 Patent: Claims 1, 2, 17<br>➤  '640 Patent: Claim 5 | Raised portion of the upper peripheral edge that substantially surrounds the outer edge of the outwardly extending peripheral flange |
| "At least in part"<br>➤  '003 Patent: Claims 1, 17<br>➤  '680 Patent: Claims 1, 17 | Plain and ordinary meaning |

| Term | Construction |
|---|---|
| ➢ '580 Patent: Claim 15 | |
| "Relatively inaccessible"<br>➢ '003 Patent: Claims 1, 17<br>➢ '680 Patent: Claims 1, 17<br>➢ '756 Patent: Claim 1 | Physically impedes access from fingers or any other object to separate the cover portion from the base portion |
| "Hinder access"<br>➢ '580 Patent: Claims 1, 15<br>➢ '640 Patent: Claim 5 | Physically impedes access from fingers or any other object to separate the cover portion from the base portion |
| "Tamper evident bridge"<br>➢ '003 Patent: Claims 1, 2, 24 | A structure that connects the lid and base portions of the container and also contains a removable tear strip, delimited by at least one severable score line, which once removed provides evidence that tampering has occurred |
| "Projection" or "arm"<br>➢ '003 Patent: Claims 2, 17<br>➢ '756 Patent: Claims 1, 7, 8<br>➢ '580 Patent: Claims 1, 15<br>➢ '640 Patent: Claim 6 | Plain and ordinary meaning |
| "Configured to substantially surround the outwardly extending peripheral flange of the cover portion"<br>➢ '756 Patent: Claim 1<br>➢ '580 Patent: Claims 1, 15 | Configured to physically impede access to the outwardly extending flange of the cover portion when the container is closed |
| "Configured to substantially surround an edge of the outwardly extending peripheral flange of the cover portion"<br>➢ '640 Patent: Claim 5 | Configured to physically impede access to an edge of the outwardly extending flange of the cover portion when the container is closed |
| "The outwardly extending peripheral flange abuts the upper peripheral rim of the base portion"<br>➢ '650 Patent: Claim 1 | Plain and ordinary meaning |

The Claim Construction Order also found that the terms "at least in part," "relatively inaccessible," and "tamper evident bridge" were not indefinite. (*Id.*).

4

After the close of fact discovery, Lacerta moved to strike portions of Inline's expert report disclosing a new doctrine of equivalents ("DOE") patent infringement theory for the "[upwardly] projecting bead" bead limitation in the '003 Patent (Claims 1, 2, 17, 19-21), the '680 Patent (Claims 1, 2, 17), and the '640 Patent (Claims 1, 2, 17), as well as the "roll of polyethylene terephthalate" limitation in Claim 3 of the '580 Patent.  (Docket No. 90).  I agreed that Inline's untimely DOE disclosure violated L.R. 16.6(d)(1)(A)(v), which requires parties to disclose "whether each element of each asserted claim is asserted to be present literally or under the doctrine of equivalents" in their infringement contentions, and granted the motion.  (*Id.*).  Therefore, the only liability theory available is direct infringement of the five patents at suit.

### III.     Legal Standard

In deciding a case on summary judgment, the Court views the facts in the light most favorable to the non-moving party and makes all reasonable inferences in that party's favor.  *O'Connor v. Steeves,* 994 F.2d 905, 907 (1st Cir. 1993).  Summary judgment is appropriate when no genuine issue exists as to any material fact, and the moving party is entitled to judgment as a matter of law.  *Eli Lilly & Co. v. Barr Labs., Inc.,* 251 F.3d 955, 962 (Fed. Cir. 2001).

Patent infringement is a two-step process that requires the court to first construe the claim terms and then compare the construed claims to the accused product.  *Markman v. Westview Instr., Inc.*, 517 U.S. 370, 374 (1996).  A patent holder must prove infringement by a preponderance of the evidence.  *S. Bravo Sys., Inc. v. Containment Techs., Corp.*, 96 F.3d 1372, 1376 (Fed. Cir. 1996).  "Literal infringement of a claim exists when every limitation recited in the claim is found in the accused device, i.e., when the properly construed claim reads on the

accused device exactly." *Cole v. Kimberly-Clark Corp.*, 102 F.3d 524, 532 (Fed. Cir. 1996)

(citing *Johnston v. IVAC Corp.*, 885 F.2d 1574, 1580 (Fed. Cir. 1989)).

Summary judgment of non-infringement may be granted only if one or more limitations

of the claim in question do not read on an element of the accused product, either literally or

under the doctrine of equivalents. *See Chimie v. PPG Indus., Inc.,* 402 F.3d 1371, 1376 (Fed.

Cir. 2005); *see also TechSearch, L.L.C. v. Intel Corp.,* 286 F.3d 1360, 1369 (Fed. Cir. 2002)

("Summary judgment of noninfringement is . . . appropriate where the patent owner's proof is

deficient in meeting an essential part of the legal standard for infringement, because such failure

will render all other facts immaterial."). Summary judgment of non-infringement can therefore

be granted only if, viewing the facts in the light most favorable to the patentee, there is no

genuine issue as to whether the accused product is covered by the claims as construed by the

Court. *See Pitney Bowes, Inc. v. Hewlett–Packard Co.,* 182 F.3d 1298, 1304 (Fed. Cir. 1999).

## IV.   Discussion

### A. Lacerta's Motion for Summary Judgment of Non-Infringement (Docket No. 115)

Lacerta moves for summary judgment of non-infringement on all the asserted claims for

all five patents on three grounds, which are addressed below in turn.

"To establish literal infringement, all of the elements of the claim, as correctly construed,

must be present in the accused system." *Netword, LLC v. Central Corp.*, 242 F.3d 1347, 1353

(Fed. Cir. 2001). "If any claim limitation is absent from the accused device, there is no literal

infringement as a matter of law." *Bayer AG v. Elan Pharm. Research Corp.*, 212 F.3d 1241,

1247 (Fed. Cir. 2000). Where an independent patent claim is not infringed, as a matter of law

any claim that depends from that claim cannot be infringed. *Wolverine World Wide, Inc. v. Nike,*

*Inc.*, 38 F.3d 1192, 1199 (Fed. Cir. 1994).

1.  <u>No Upwardly Projecting Bead</u>

All the asserted '003 and '680 Patent claims and Claim 5 of the '640 Patent require,

either explicitly or by dependance, an upwardly projecting bead ("UPB").  (Inline's Sealed Opp.

to Lacerta's Stmt. of Undisputed Mat'l. Facts ("IOLSUF") ¶¶ 18, 25, 37, Docket No. 147).

Claim 1 of the '003 Patent, for example, states:

> "1. A tamper-resistant/evident container comprising:
> a)  a plastic, transparent cover portion including an outwardly extending peripheral flange;
> b)  a base portion including an upper peripheral edge forming at least in part an *upwardly projecting bead* extending substantially about the perimeter of the base portion and configured to render the outwardly extending flange of the cover portion relatively inaccessible when the container is closed; and
> c)  a tamper evident bridge connecting the cover portion to the base portion."

Lacerta argues that there is no genuine dispute whether any of the Accused Products contain a

UPB, as that term was construed by the Claim Construction Order, and so summary judgment of

non-infringement is appropriate on the '003 Patent, the '680 Patent, and Claim 5 of the '640

Patent.  I disagree.

The Claim Construction Order construed UPB to mean a "raised portion of the upper

peripheral edge [of the base portion] that substantially surrounds the outer edge of the outwardly

extending peripheral flange [of the cover portion]."  In other words, the upper peripheral rim of

the base portion of the container must have a raised portion (the bead) which substantially

surrounds the outwardly extending flange of the cover portion.

Inline claims the Accused Products have such a bead.  Lacerta objects.  First, it points to

statements by three of the '003 patent inventors about the function of the UPB.  Inventor

Tadeusz Klimaszewski described the Safe-T-Fresh containers as having a "blocking rail," or a

"perimeter raised feature on the base" such that when the cover and lid are closed, the cover

flange "resides inside the blocking rail" rather than being "exposed just on a flat surface."

(Klimaszewski Tr. 38: 7-25, Docket No. 131-1).   However, the legal standard to compare the Accused Product to is not the inventors' descriptions of the allegedly infringed product, but the claims in the infringed product's patent, as construed by the Court in a *Markman* hearing.  ("It is error for a court to compare in its infringement analysis the accused product of process with the patentee's commercial embodiment on other version of the product of process; the only proper comparison is with the claims of the patent." *Fleet Engineers, Inc. v. Mudguard Techs*., 761 F. App'x 989 (Fed. Cir. 2019)).

Second, Lacerta argues that Inline already conceded what a "beadless" container looks like in a prior settlement, and cannot make contrary claims here.  In 2011, Inline sued another container manufacturer, Par Pak, for infringement of the '003 Patent, in the U.S. District Court for the District of Connecticut.  (IOLSUF ¶ 78).  As part of the Par-Pak settlement, Par Pak redesigned its BreakAway containers in exchange for Inline's covenant not to sue.  (¶¶ 81-82).  Inline objects to the introduction of settlement evidence under Fed. R. Evid. 408, which bars introducing settlement officers to prove liability or for impeachment.  Setting aside R. 408, the Par Pak settlement evidence is not helpful: the redesign shows what design Inline was willing to allow Par-Pak to sell without suing for patent infringement, but it is not a legal determination that such a design does not contain an UPB within the meaning of the '003 patent.  Inline's R. 30(b)(6) credibly testified that the "beadless" container Inline approved was "a product that we agreed not to—you know, we gave them a covenant not to sue based on this new design.  We didn't talk about infringement in any way."  (Orkisz Dep. 106:22-107:5, Docket No. 119, Ex. 5).

Finally, Lacerta's expert report uses CT scans of the Accused Products to show that there is no UPB:

 

**(Fig. 1. MacLean Rep. at 4).**

According to Lacerta's non-infringement expert, Dr. MacLean, CT cross-section images of the Accused Products, such as TE-RT-16 above, show no UPB because the peripheral flange's "entire top surface and its outer edge surface are completely unencumbered . . ." (MacLean Rep. ¶¶ 47, 50, 52, 54, 56, 68, 97, 106).  Per Dr. MacLean, "a POSA[2] would understand that an upwardly projecting bead would be a design element that is bead-like and projects in an upward fashion from the peripheral edge/rim of the container's base, and substantially surrounds the flange such that it hinders access to the flange."  (¶¶ 69, 89).

The outer flange of the cover edge of the rim of the base of the Accused Products are smooth, without ridges, walls, or protuberances, as the CT image above depicts.  However, it does not necessarily follow that there is no UPB because the patent does not bar the UPB and the upper peripheral edge of the base from being coextensive.  Under the Court's construction, an UPB is "a raised portion of the upper peripheral edge that substantially surrounds the outer edge of the outwardly extending peripheral flange."  That construction must be read within the second limitation of Claim 1 of the '003 Patent, which provides for "a base portion including an upper peripheral edge forming *at least in part* an upwardly projecting bead extending substantially

---

[2] Person of Ordinary Skill in the Art.

9

about the perimeter of the base portion and configured to render the outwardly extending flange

of the cover portion relatively inaccessible when the container is closed." ('003 Patent, cl. 1)

(emphasis added).  "At least in part" signifies that the UPB may be coextensive with the

upwardly projecting edge.

At least one of the photographs of the Accused Products in Inline's expert report creates a

genuine dispute about the presence of an UPB.  (See Kazmer Rep., Docket No. 126-1 at 31).

The photo below shows that the base portion of Accused Product has an angled rim which

surrounds the cover portion of the container, with the cover portion fitting into the base portion

at slightly shorter height.  A reasonable juror could find that the portion of the outer rim of the

base which is outside the cover flange constitutes an UPB.



**(Kazmer Rep. at 31, Docket No. 126-1).**

Upon review of the expert reports and meticulous examination of the four exemplar

accused products delivered to the Court,[3] I find that a reasonable juror could perceive that the

---

[3] The Accused Products fall into five categories, based on their shape: rectangle, snack, sub, parfait, and wedge-style.  Lacerta submitted exemplars TE-RT-48 (Rectangle Container), Bates-stamped # LGI0000256, and TE-RT-120 (Rectangle Container),  Bates-stamped  # LG000001.

Accused Products have an UPB. The upper peripheral edge of the base portion, when placed on a flat table, is not perpendicular to the table. It is a smooth, uninterrupted plane without protuberances, but it slopes up at an angle. The outer flange of the cover portion is similarly raised at an angle. From some vantage points, the upward angle of the base portion appears steeper than the upward angle of the cover, so that the two may not sit exactly flush. Whether the upward angle of the base edge is steep enough when compared to the angle of the cover flange to find that it constitutes an UPB which substantially surrounds the outer edge of the cover flange within the meaning of the patents at suit is a matter of fact that should be decided by a jury.

2.  Bead or the Upper Peripheral Rim Do Not Hinder Access to Closed Container or Render the Outwardly Extending Flange of the Cover Portion Relatively Inaccessible

Claims 1-3, 6-7, 9, 17-20, 24-25 of the '003 Patent, the '680 Patent asserted claims, and Claim 5 of the '640 Patent each recite: an "upwardly projecting bead . . . configured to render the outwardly extending flange of the cover portion *relatively inaccessible* when the container is closed" ('003 Patent, cl. 1, 17; '680 Patent, cl. 1, 17) or an "upwardly projecting bead . . . to *hinder access* to the container when the container is closed" ('640 Patent, cl. 5). The Court construed both "relatively inaccessible" and "do not hinder access" as "physically impedes access from fingers or any other object to separate the cover portion from the base portion."

Lacerta claims that the Accused Products are not "relatively inaccessible" or do not "hinder access" when the cover is closed because the base portion "bead" does not shield the outwardly extending flange on the cover portion of the Accused Products. Lacerta emphasizes that its 30(b)(6) deponent was actually able to open an Accused Product without removing the

Inline submitted exemplars TE-RPF-11 (Parfait Container), Bates-stamped #0000268, and Product Code 21799 (Rectangle Container), Bates-stamped # LGI00000487.

tear strip using his fingers, but when the Court construed "relatively inaccessible" it observed in a footnote that a product did not need to be 100% inaccessible to meet the patent limitation. (Docket No. 53 at 54, n. 5).

Inline's expert infringement report takes the position that the lids of the Accused Products are difficult, but not impossible, to open because "the lid portion's peripheral flange is retained in tension within the base portion's raised portion of the upper peripheral edge . . . the inclined shape of the mating side walls with this downward force causes the upper peripheral edge to be held against the base portion's upper peripheral bead."  (Kazmer Rep. at 37-38).  The MacLean Report disagrees, stating credibly that from that expert's inspection of the same product that the only force required to open the container is generated by the locking features that hold the container closed, not the fit of the cover flange within the base flange.



**(Fig. 3, MacLean Rep. at 36).**

As demonstrated by Lacerta's expert, the red cover portion of the Accused Product is molded and shaped so that prying the Accused Product open with a fingertip would be difficult for two reasons: (1) the cover flange does not lie flat against the base flange, which is raised at an

angle, and (2) even if you could gain purchase by tilting the Accused Product and using a fingernail to jimmy the container open, applying force would cause the lid portion to sink into the base, not pop off.  Reviewing this schematic and the exemplar Accused Products, Inline has created a genuine issue of material fact about whether the cover's outwardly extending flange is relatively inaccessible or access is hindered by the outwardly projecting bead that should be reserved for a jury.

Inline also cites Lacerta's FRESH N' SEALED promotional materials, which proclaim that the Accused Products cannot be opened without ripping the tear strip, as evidence that Lacerta's products are relatively inaccessible.  This is not dispositive or particularly useful evidence since the class of Accused Products (18) represents less than 25% of Lacerta's total FRESH N' SEALED product line (80).

3. Outwardly Extending Peripheral Flange of the Cover Does Not Abut the Upper Peripheral Rim of the Base

Lacerta's third ground for summary judgment of non-infringement is limited to the '640 Patent.  Claim 1 of the '640 Patent, upon which all other '640 claims are dependent, states an "outwardly extending peripheral flange of the cover portion [which] *abuts* the upper peripheral rim of the base portion."  ('640 Patent, cl. 1) (emphasis added).  Claim 5 also requires that the base portion "form[s] an upwardly projecting bead extending substantially about the perimeter of the container and configured to substantially surround an edge of the outwardly extending peripheral flange of the cover portion to hinder access to the container when the container is closed."  ('640 Patent, cl. 5).  However, Claim 5 depends from Claim 1.  ('640 Patent, cl. 5: "5. The method of claim 1, wherein forming the base portion further comprises . . . an upwardly projecting bead . . .").

13

The Court defined "abut" by its plain and normal meaning: to "border on" or "touch along an edge." (Docket No. 43 at 18). Therefore, Claim 1 states a requirement that "the outwardly extending peripheral flange [of the cover portion] borders upon or touches the upper peripheral rim of the base portion" when the container is closed. (*Id*.).

Lacerta does not dispute that the outwardly extending flange of the covers of the Accused Products touch the upper peripheral rims when they are closed. Rather, it states that the Accused Products do not comport with a particular specification in the '640 Patent which states that "[t]he upper peripheral rim is configured to communicate with at least a portion of the outwardly extending peripheral flange of the cover portion to hinder access to the container when the container is closed." When the Court construed Claim 1 of the '640 Patent, it did not require anything more than the plain and ordinary meaning of "abut." (Docket No. 43 at 18). It did not incorporate the "hinder access" specification cited by Lacerta into that Claim, and Lacerta has not shown why the Court should do so now.

Lacerta's motion for summary judgment of non-infringement is ***denied***.

## B. Inline's Motion for Partial Summary Judgment of Infringement (Docket No. 117)

Inline seeks partial summary judgment that the Accused Products infringe the asserted claims its '003, '680, '756, '580, and '640 patents. Rather than show how each limitation of each claim in each patent in dispute is present in the Accused Products, Inline's motion focuses on three non-infringement arguments offered by Dr. MacLean, which were the subject of Lacerta's motion for summary judgment of non-infringement, *see supra* Part IV.A. (Docket No. 125 at 8). As it did in its opposition to Lacerta's motion for summary judgment of non-infringement, Inline argues Dr. MacLean's NonInfringement Rebuttal Report does not rebut the conclusive evidence of infringement in Dr. Kazmer's expert report. (*See* Docket No. 126-2).

Lacerta's opposition relies on a useful analogy for this hearing to demonstrate that the Accused Products lack an UPB and are not relatively inaccessible or with hindered access: a rug lying on the floor.  Lacerta argues that the cover flange on its Accused Products lies on top of the peripheral rim of the base section like a rug lies on top of a floor: there is no barrier preventing a person from picking up the rug, which is lying flat, just as there is no UPB or feature of the base portion which renders the Accused Products "relatively inaccessible" or "hinder[s] access" to them. (Docket No. 152 at 4).  Even if the floor is at an at an angle, says Lacerta, "there is no "raised structure" that impedes lifting the of the area rug just because the floor is on an angle or the floor is above a foundation."  (*Id.*).

In short, whether to grant summary judgment on the bulk of the claims (outside of the third motion for summary judgment on damages, discussed below, and Claims 1, 2, 3, 4, and 6 of Patent '640 which do not contain a limitation for a bead or a feature on the base portion that explicitly hinders access or renders the container relatively inaccessible) depends on whether the raised angle of the peripheral rim of the base section of the Accused Products functions to "physically impede access from fingers or any other object to separate the cover portion form the base portion."  After comparing the claims in the patents in suit in the light of the Court's prior Claim Construction Order, reading each side's expert reports, including drawings, models, and CT scans of the Accused Products, and studying the exemplars, I find that there are genuine issues of material fact which must be addressed by a jury, not this Court.

However, Inline is entitled to summary judgment on Claims 1, 2, 3, 4, and 6 of Patent '640.  Claim 5 contains two additional limitations that are not suitable for summary judgment under the Court's prior analysis: the presence of an UPB and an "outwardly extending flange of the cover portion" which "hinder[s] access to the container when the container is closed."

Claims 1, 2, 3, 4, and 6 do not contain such limitations.  Lacerta argues that Claim 1 (upon which Claims 2, 3, 4, 5, and 6 depend), which states "[a] method of thermoforming a tamper-resistant/tamper evident container [wherein] . . . the outwardly extending peripheral flange of the cover portion abuts the upper peripheral rim of the base portion" should be ready to include a specification in the '640 patent, which provides that "[t]he upper peripheral rim is configured to communicate with at least a portion of the outwardly extending peripheral flange of the cover portion to hinder access to the container when the container is closed."  The Court declined to read this specification into Claim 1 when it denied Lacerta's proposed construction for "the outwardly extending peripheral flange abuts the upper peripheral rim of the base portion" as "[a]ccess to the extern edge of the outwardly extending flange is physically blocked by being in close proximity to and extending vertically in height at least a portion of the height of the inner edge of the upper peripheral rim."  (Docket No. 33 at 18).  Indeed, the Court's analysis of Claim 1, which discussed other specifications relating to Claim 1, indicates that it paid close attention to how to construe "abuts" in light of the specifications in the '640 Patent.  (*Id.*).

Inline's motion for summary judgment of infringement is ***granted*** as to Claims 1, 2, 3, 4, and 6 of the '640 Patent.

### C.  Inline's Motion for Summary Judgment on Lacerta's Damages Theory and to Exclude Portions of Lacerta's Expert Opinion (Docket No. 130)

The two measures of damages for patent infringement are lost profits and reasonable royalties.  35 U.S.C. § 284 of the U.S. Patent Act provides that a patent owner shall be awarded "damages adequate to compensate for the infringement, but in no event less than a reasonable royalty."  The applicable royalty rate is typically determined using the fifteen *Georgia-Pacific* factors.  *See Georgia-Pacific Corp. v. U.S. Plywood-Champion Papers, Inc.*, 446 F.2d 295 (2d Cir. 1971).

Assuming Lacerta's liability, Lacerta's damages expert William Scally estimates that Inline is entitled to $9,000 to $90,000 in damages, which represents the hypothetical cost for Lacerta to design around the Inline patents to produce non-infringing alternatives rather than pay royalty fees, and no lost profit damages.  Inline's damages expert Christopher Barry estimates that Inline is entitled to $8.66 million in lost profits and, for those sales not compensated by lost profits, $633,057 in reasonable royalties, applying a royalty rate of 7.5%.  (*Compare* Docket Nos. 128-2 ("Scally Rep.") at 43 *with* 128-1 ("Barry Rep.") at 25).

Scally did not suggest an applicable royalty rate.  Instead, he assessed Lacerta's in-house design and manufacturing capabilities, surveyed the rigid plastic container market, and determined that there were enough non-infringing designs readily available that Lacerta could quickly redesign the 18 Accused Products for $9,000 to $90,000, so Lacerta would be unwilling to pay Inline any higher royalty:

> "80. Because there are multiple available non-infringing alternatives that would require minimal time and cost to implement, I conclude that related total design-around costs of **$9,000 to $90,000**[185] would be a key benchmark the parties would have considered in their hypothetical negotiation, and likely a ceiling on royalties from Lacerta's perspective.
>
> 91. As Lacerta would be unwilling to pay more to license the asserted patent than it would incur to quickly design around the patents, the cost to design around the patents, **$9,000 - $90,000**[207], represents the likely outcome of a hypothetical negotiation. The impact of the GP [Georgia-Pacific] factors is downward – 3 factors downward, 7 neutral, and 2 upward – suggesting that the outcome of the hypothetical negotiation would be at the lower end of the contemplated range. A flat fee of $9,000 to $90,000 is consistent with appropriate apportionment theory and reflects  the relatively minimal incremental value of the patented technology."

Inline objects that capping reasonable royalties at the alleged cost of designing around the infringed patent is barred by *Mars*.  *Mars v. Coin Acceptors, Inc.*, 527 F. 3d 1359, 1373 (Fed. Cir. 2008).  Inline seeks: 1) to exclude the portion of his opinion pertaining to royalty calculations, and 2) summary judgment that its royalty damages cannot be capped at the at the

cost of a design-around, and if Lacerta is found liable, the reasonably royalty should be set based on the rate proposed in Lacerta's expert report (7.5%).

Procedurally, Inline's motion is premature.  Claims or defenses, or parts of certain claims or defenses, are the only proper subjects for a summary judgment motion.  Fed. R. Civ. P. 56(a). Challenging the methodology in an expert opinion should be settled at a *Daubert* hearing after summary judgment on liability, or upon a motion to strike; there is no need to reach the damages expert opinions now before reaching the pending summary judgment motions for infringement.

Substantively, it would be improper to impose the 7.5% royalty rate that Barry proposes even if the Court decided to exclude all or part of the Scally Report.  Unless Scally is disqualified as an expert witness, which seems an extreme sanction, his critique of Barry's 7.5% rate should factor into the determination of the reasonable royalty rate under the *Georgia Pacific* factors, if a jury finds liability for infringement.  Even if I decided to exclude Scally's written critique of Barry's 7.5% rate, it would be inappropriate to set 7.5% as the reasonable rate at summary judgment because Lacerta could still seek to challenge that rate at trial through cross-examination.  *See M2M Solutions LLC v. Enforce, Inc*., 167 F.Supp.3d 665, 682 (D. Del. 2016).

## V.      Conclusion

For the reasons stated above, Lacerta's motion for summary judgment of non-infringement (Docket No. 115) is ___**denied**___; Inline's motion for partial summary judgment of infringement is ___**denied in part and granted in part**___; and Inline's motion for summary judgment on Lacerta's damages theory and to exclude portions of its expert testimony is ___**denied**___.

**SO ORDERED.**

*/s/ Timothy S. Hillman*
**TIMOTHY S. HILLMAN**
**DISTRICT JUDGE**